UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

LAS UVAS VALLEY DAIRIES,            Case No. 17-12356-t11

    Debtor.

ROBERT MARCUS,

    Plaintiff,

v.            Adv. No. 19-1009

LAS UVAS VALLEY DAIRIES,
DEAN HORTON, FRANCES HORTON,
LOREN HORTON, and MITCHELL HORTON,

    Defendants.

## OPINION

Plaintiff, the liquidating trustee of this bankruptcy estate, asks the Court to enjoin the individual defendants from dealing freely with their property pending entry of a final judgment. In response to Plaintiff's complaint and motion for preliminary injunction, three of the individual defendants filed chapter 7 bankruptcy cases. The fourth, Loren Horton, argues that the pre-judgment relief requested cannot be granted by this Court. The Court agrees with Mr. Horton where, as here, Plaintiff's claims are legal rather than equitable. The preliminary injunction motion therefore will be denied.

I.     FACTS

The Court finds:[1]

Debtor Las Uvas Valley Dairies, a New Mexico general partnership, filed this chapter 11 case on September 15, 2017. Debtor operated a large dairy about 50 miles northwest of Las Cruces, New Mexico. On the petition date, Debtor's dairy herd included about 12,292 milking cows, 120 bulls, and 4,756 heifers. The individual defendants are the general partners of the Debtor.

Debtor owed about $52,000,000 to its secured and unsecured creditors on the petition date. Debtor attempted to reorganize its debts in the chapter 11 case but was not able to operate profitably post-petition and did not appear to have any realistic hope of reorganizing. Instead, on June 14, 2018, the Court confirmed a joint creditor plan of liquidation.

Under the liquidating plan, Plaintiff was appointed the liquidating trustee on July 31, 2018.[2] Article 8.3 of the plan provides:

> 8.3. Powers and Duties of the Liquidating Trustee. Pursuant to the terms and provisions of the Plan, the Liquidating Trustee shall be empowered and directed to (a) take all steps necessary (including litigation) to recover all possible assets to satisfy all Claims in full; (b) liquidate assets, including but not limited to being authorized to sign agreements, deeds, and bills of sale conveying title to Assets to any Purchaser(s); (c) make distributions contemplated by the Plan; (d) comply with the Plan and the obligations thereunder; (e) borrow funds from MetLife or PCA as provided herein; (f) employ, retain or replace professionals to represent it with respect to its responsibilities; (g) make reports regarding the status of distributions under the Plan; (h) exercise such other powers as may be vested in the Liquidating Trustee pursuant to order of the Bankruptcy Court, or the Plan, including, but not limited to taking appropriate action as may be necessary to pursue, sue, litigate, preserve, protect and recover all assets and monies and causes of action, and to liquidate the assets it recovers. The Liquidating Trustee may prosecute or defend any action in its name, the name of the estate, or any other lawful name, except for the Water Rights Avoidance Action.

---

[1] The Court took judicial notice of its docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

[2] On July 18, 2018, the first liquidating trustee resigned.

Plaintiff filed this adversary proceeding on February 15, 2019, against the Debtor and its general partners. The complaint asserts six counts:

    I.     Declaratory judgment re: § 544 (against the Debtor only);
    II.    Declaratory judgment re: NMSA § 54-1A-306(a) (against the general partners);
    III.   Declaratory judgment re: NMSA §§ 54-1A-307(d)(2) and 307(d)(4) (against the general partners);
    IV.   Injunction against disposing of assets (against general partners);
    V.    Avoidance of preferential transfers per § 547 (against the general partners); and
    VI.   § 550 liability for avoided transfers (against the general partners).

Count IV, the injunction count, alleges in pertinent part:

> 60. The Successor Trustee may levy against the General Partners' assets. The issuance of an injunction is therefore appropriate to prohibit the General Partners from depleting any of their assets available to satisfy the Successor Trustee's judgment.
> 61. The Successor Trustee is substantially likely to prevail on the merits of this adversary proceeding.
> 62. In addition, the balance of harms weighs in favor of enjoining the General Partners from disposing of and depleting their assets without the Successor Trustee's consent.
> 63. Allowing the General Partners to dispose of valuable property would result in irreparable harm to the Successor Trustee and the Liquidating Trust, and the Successor Trustee is without an adequate remedy at law.
> 64. The Successor Trustee is pursuing and administering assets post-confirmation for the benefit of Debtor's creditors. Accordingly, Fed. R. Bankr. P. 7065 applies and permits the preliminary injunction requested to be issued without compliance of the bond requirement in Fed. R. Civ. P. 65.
> 65. Given the foregoing, an injunction barring the General Partners from disposing of collateral is appropriate and essential. Accordingly, good cause exists for the entry of injunctive relief and the Court should enjoin the General Partners from disposing of their assets without the Successor Trustee's consent.

Plaintiff filed a motion for preliminary injunction on February 20, 2019, seeking the following preliminary relief:

- A preliminary injunction precluding the general partners from transferring their assets without Plaintiff's consent;
- Requiring the general partners to segregate the proceeds of any asset sold with Plaintiff's consent; and
- Authorizing Plaintiff to attach and levy the assets of the general partners.

By May 20, 2019, all the general partners other than Loren Horton had filed chapter 7 bankruptcy cases. Thus, the May 21, 2019, preliminary injunction hearing proceeded solely against Loren Horton.

At the hearing Mr. Horton testified that his and his wife's assets are:

| Asset | Value |
|---|---|
| Checking account | $1,293.53 |
| Savings account | $10,400.89 |
| Edward Jones account (529 education savings account for son) | $10,969.79 |
| Edward Jones account #2 | $53.77 |
| Roth IRA | $22,401.88 |
| House | $650,000 |
| Farm Credit co-op stock | $1,000 |
| 50% ownership interest R Bar L LLC | $117,995.82 |
| 50% ownership interest Blue Canyon Hunts, LLC | $200 |
| Chevrolet 3500 | $10,000 |
| Ford F250 | $30,000 |
| Stock trailer | $5,000 |
| 5 horses | $2,500 |
| Total: | $861,815.68 |

and that his liabilities were:

| Liability | Amount |
|---|---|
| Visa credit card | $2,404.39 |
| Discover credit card | $446.87 |
| Mortgage held by Farm Credit on house | $396,466.63 |
| Total: | $399,317.89 |

Mr. Horton testified that he and his wife hope to sell their house, pay off the mortgage, and buy a smaller house closer to town and their children's school.[3] The house currently is on the market. Mr. Horton estimated that he and his wife would realize between $80,000 and $120,000, after closing costs, on the sale of their house, "Maybe a little bit more if we get what we're asking

---

[3] Mr. Horton currently lives about 25 minutes north of Las Cruces, New Mexico.

for it."

At the hearing, Plaintiff testified that the shortfall in the liquidation estate is projected to be more than $12,000,000.

II.       DISCUSSION

Plaintiff moves the Court to enjoin Mr. Horton from transferring his assets without Plaintiff's consent, pending entry of a final judgment in this proceeding. The Court will analyze whether it has the power to grant Plaintiff's motion under the federal rules of civil procedure and/or the Bankruptcy Code and Rules.

A.    Pre-Judgment Injunctive Relief as a Creditor Remedy.

1.    In General. The law is clear that an unsecured creditor suing to collect a debt cannot obtain pre-judgment injunctive relief from a federal court that interferes with the defendant's use of his property. The leading case is *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). In *Grupo Mexicano*, an investment fund sued a Mexican toll road operator alleging a default on its note obligations. The fund sought a money judgment and asked for a preliminary injunction preventing the toll road operator from transferring assets. The district court issued the injunction, a decision that was affirmed by the Second Circuit Court of Appeals. The Supreme Court reversed, holding that "the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." 527 U.S. at 333. In so ruling the court stated:

> The rule requiring a judgment [before equitable remedies could be employed] was a product, not just of the procedural requirement that remedies at law had to be exhausted before equitable remedies could be pursued, but also of the substantive rule that a general creditor (one without a judgment) had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property. As stated by Chancellor Kent: "The reason of the rule seems to be, that until the creditor has established his title, he has no right to interfere, and it would lead to an unnecessary, and, perhaps, a fruitless

and oppressive interruption of the exercise of the debtor's rights.

527 U.S. at 319-20. *GMD v. Alliance Bond* is binding on the lower courts, including this Court. *See, e.g., In re 2920 ER, LLC*, 607 Fed. Appx. 349, 355 (5th Cir. 2014); *Niemi v. Lasshofer*, 728 F.3d 1252. 1257 (10th Cir. 2013); *In re Focus Media, Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004) (*GMD v. Alliance Bond* is limited to cases in which a plaintiff seek only money damages)*; Ellipso, Inc. v. Mann*, 480 F.3d 1153 (D.C. Cir. 2007) (to the same effect); *Prosper, Inc. v. Innovative Software Technologies*, 188 Fed. Appx. 703, 705 (10th Cir. 2006) (unpublished).

      2.      <u>The Exception for Equitable Claims</u>. Plaintiff cites *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), in support of his position. *Deckert* involved an action to rescind a securities transaction. Plaintiff also sought, and obtained, a preliminary injunction restraining the defendant from transferring assets while the rescission action was pending. The Supreme Court affirmed the grant of the preliminary injunction. *Deckert* is distinguishable from *Grupo Mexicano* because in *Deckert* the underlying cause of action was *equitable* rather than legal. *Grupo Mexicano* stated:

> *Deckert* is not on point here because, as the Court took pains to explain, "the bill state[d] a cause [of action] for equitable relief." *Id.,* at 288, 61 S. Ct. 229.
>
>> "The principal objects of the suit are rescission of the Savings Plan contracts and restitution of the consideration paid.... That a suit to rescind a contract induced by fraud and to recover the consideration paid may be maintained in equity, at least where there are circumstances making the legal remedy inadequate, is well established." *Id.,* at 289, 61 S. Ct. 229.
>
> The preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a legal debt.

527 U.S. at 325. Thus, the strength of Plaintiff's preliminary injunction motion rests in large part on whether his non-injunction claims against Mr. Horton are legal or equitable.

3. <u>Analysis of Plaintiff's Claims</u>.

a. <u>Count I</u>. Count I is brought against the Debtor only and therefore is irrelevant.

b. <u>Counts II and III</u>. Counts II and III seek declaratory judgments. Declaratory Judgment claims are not equitable. *See, e.g., Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988) ("Actions for declaratory judgments are neither legal nor equitable"); *Hartford Fin. Sys., Inc. v. Florida Software Servs.*, 712 F.2d 724, 727 (1st Cir. 1983) (same); *American Safety Equip. Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir. 1968) (same). Further, Count II asks the Court to declare that Plaintiff is entitled to a $13,000,000 judgment against the general partners, while Count III asks for a declaratory judgment that Plaintiff may levy the assets of the general partners to collect the judgment. Obtaining and collecting money judgments are legal, rather than equitable, actions.[4]

c. <u>Count IV</u>. Count IV, the injunctive relief claim, is the basis for the preliminary injunction motion. The legal or equitable character of the other claims will determine the viability of the motion.

d. <u>Counts V and VI</u>. Finally, counts V and VI are brought under §§ 547 and § 550 of the Bankruptcy Code. Case law makes clear that these actions are legal rather than

---

[4] Count III asks the Court to declare that Plaintiff can levy Mr. Horton's assets, relying on N.M.S.A. § 54-1A-307(d)(2) and (d)(4). This statute gives a judgment creditor of a partner certain limited rights of levy. Plaintiff does not have a judgment against Mr. Horton, however. As stated in N.M.S.A. § 54-1A-307(c):

> A judgment against a partnership is not by itself a judgment against a partner. A judgment against a partnership may not be satisfied from a partner's assets unless there is also a judgment against the partner.

To the extent Plaintiff argues that his § 544 "strong arm" powers allow Plaintiff to levy Mr. Horton's assets without a judgment against him, the Court overrules the argument.

equitable. In *Zimmerman v. Cavanagh (In re Kenval Marketing Corp.)*, 65 B.R. 548 (E.D. Pa. 1986), the court discussed whether a preference action seeking purely monetary relief was a legal or equitable claim. The court cited *Schoenthal v. Irving Trust Co.*, 287 U.S. 92 (1932):

> In *Schoenthal v. Irving Trust Co.* . . . the Supreme Court unequivocally established that preference actions seeking only monetary relief are properly classified as actions at law, thereby entitling the parties to a trial by jury. In its holding, the Court emphasized that the preferences sued for "were money payments of ascertained and definite amounts," and since there was a clear and adequate remedy at law, the suit did not lie in equity.

65 B.R. at 553, citing 287 U.S. at 95-97. The *Kenval Marketing* court then reviewed later decisions:

> Courts that have subsequently considered the issue have generally adopted the reasoning of *Schoenthal,* finding a right to a jury trial where a preference or fraudulent conveyance action seeks only money damages. *See, e.g., In re O.P.M. Leasing Services, Inc.,* 48 B.R. 824 (S.D.N.Y.1985) (Where trustee sought only money damages in fraudulent conveyance action, relief sought was legal rather than equitable and the creditors were entitled to a jury trial); *Matter of Paula Saker & Co., Inc.,* 37 B.R. 802 (Bankr.S.D.N.Y.1984) (Where preference action was merely for money had and received in violation of the Bankruptcy Code, relief sought was legal and there was a right to a jury trial); *In re Huey,* 23 B.R. 804 (9th Cir. BAP 1982) (Where prayer of trustee's complaint seeks only to avoid a transfer and the return of money transferred, complete relief can be granted by entry of money judgment and defendant is entitled to a jury trial.). *See also In re Sunair International, Inc.,* 32 B.R. 142 (Bankr.S.D.Fla.1983); *In re Portage Associates, Inc.,* 16 B.R. 445 (Bankr. N.D. Ohio 1982); *In re Arnett Oil, Inc,* 44 B.R. 603 (N.D. Ind. 1984); *In re Black & Geddes, Inc.,* 25 B.R. 278 (Bankr. S.D.N.Y. 1982).

65 B.R. at 553–54.

The court emphasized that "very few cases have found that a preference or fraudulent conveyance action seeking only the recovery of money damages lies in equity, and the reasoning of those courts that have done so is suspect." *Id.* at 555. The court concluded that when a trustee seeks only money damages in a preference or fraudulent conveyance action, the action is one at law, and the parties have a right to a trial by jury on such claims.

*Kenval Marketing* anticipated two Supreme Court cases that remove all doubt on this issue. In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), the Supreme Court ruled that a claim to avoid a fraudulent transfer under § 548 is a legal action rather than an equitable one. A year later, in *Langenkamp v. Culp*, 498 U.S. 42 (1990), the Supreme Court held:

> If a party does *not* submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial.

496 U.S. at 45 (emphasis in original). *See also T.O.S. Industries, Inc., v. Ross Hill Controls Corp.*, 72 B.R. 749 (S.D. Tex. 1987) (preference action is legal, not equitable, so defendant was entitled to a jury trial); *In re North Carolina Hosp. Ass'n Trust Fund*, 112 B.R. 759, 761 (Bankr. E.D.N.C. 1990) (same, citing *Granfinanciera*).

The Court concludes that Counts V and VI assert legal claims. Thus, none of the non-injunction claims brought by Plaintiff against Mr. Horton is equitable.

4. <u>The *Santa Fe Medical* case</u>. Finally, Plaintiff cites *UCC v. Philip Briggs (In re Santa Fe Medical)*, 2015 WL 9261764 (Bankr. D.N.M.), in support of its preliminary injunction request. *Santa Fe Medical* is readily distinguishable, as it involved a two-party dispute over the right to an income tax refund. Because one of the parties had received the refund and was unwilling to commit not to spend it, the Court determined that it would be prudent to enjoin any expenditures until the dispute had been resolved. The Court made clear in its opinion, however, that:

> this situation is quite different from a creditor-plaintiff asking the Court to tie up a debtor's money pending the outcome of a collection or avoidance action, so the creditor can win the "race to the courthouse." For a number of reasons, entry of a preliminary injunction in such cases would rarely if ever be appropriate.

2015 WL 9261764, at *4, n. 3. In *Santa Fe Medical*, the Court determined that it was reasonable to prevent the dissipation of a disputed *res* while its ownership was being litigated. There is no

similar dispute here.

B.     Pre-Judgment Remedies Under the Bankruptcy Code and Rules.

With the exception discussed below, the Bankruptcy Code and Rules do not provide for pre-judgment remedies greater than those available under the Federal Rules of Civil Procedure and/or other federal law. Bankruptcy Rule 7065 allows bankruptcy courts to enter injunctions, but clearly does not give bankruptcy courts any powers denied to district courts under *Grupo Mexicano*. The Bankruptcy Code gives trustees several "strong arm" powers and statutory rights of recovery. *See, e.g.*, §§ 542, 544, 545, 547, 548, and 549. Claims under these Code sections must be brought by adversary proceeding, to which, in general, the Federal Rules of Civil Procedure apply.[5] Together, the Bankruptcy Code and Rules give bankruptcy trustees powerful tools to collect or recover estate assets and pay creditors. They do not provide, however, for pre-judgment remedies such as the right to an injunction tying up a defendant's assets.

The exception is § 723 – Rights of Partnership Trustee Against General Partners:

> (a) If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner to the extent that under applicable nonbankruptcy law such general partner is personally liable for such deficiency.
>
> (b) To the extent practicable, the trustee shall first seek recovery of such deficiency from any general partner in such partnership that is not a debtor in a case under this title. *Pending determination of such deficiency, the court may order any such partner to provide the estate with indemnity for, or assurance of payment of, any deficiency recoverable from such partner, or not to dispose of property.*
>
> . . . .

(emphasis added). Plaintiff did not bring a claim under § 723. Because of that, the Court did not think it appropriate to attempt to fashion a § 723(b) order.

---

[5] Most of the Federal Rules of Civil Procedure, including rule 65, are incorporated by reference by the Federal Rules of Bankruptcy Procedure.

III. <u>CONCLUSION</u>

Apart from § 723(b), which has not been pled, the Court lacks authority to enjoin Mr. Horton's use of his property pending the outcome of Plaintiff's collection action. Plaintiff's motion for a preliminary injunction therefore will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Court

Entered: June 19, 2019

Copies to: electronic notice recipients